UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | 1:23-cr-44 |
| v. | ) | |
| | ) | Judge Collier/Lee |
| | ) | |
| RANDA ALLISON | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Randa Allison ("the defendant" or "Allison"), and the defendant's attorney, Brandon Raulston, have agreed upon the following:

1. Defendant will plead guilty to the following count in the Superseding Indictment:

    (a) **Count Two: Conspiracy to Commit Wire and Mail Fraud, 18 U.S.C. §§ 1349, 1343, and 1341.**

    The punishment for this offense is a term of imprisonment of not more than 30 years; a term of supervised release of not more than five years; a fine of not more than $1,000,000; a special assessment of $100; forfeiture, if applicable; and restitution to the victims of the offense as set forth below.

2. In consideration of the defendant's guilty plea, the United States agrees to dismiss the remaining count against this defendant in the Superseding Indictment (Count One) at the time of sentencing.

3. The defendant has read the Superseding Indictment, discussed the charges and possible defenses with defense counsel, and understands the crime charged. The defendant is pleading guilty because the defendant is in fact guilty.

In order to be guilty, the defendant agrees that each of the following elements of the crime(s) must be proved beyond a reasonable doubt:

**Count Two:** **Conspiracy to Commit Wire and Mail Fraud, 18 U.S.C. §§ 1349, 1343, and 1341:**

    (1) The defendant combined, conspired, confederated and agreed with another;

    (2) To knowingly devise or participate in a scheme to defraud in order to obtain money or property;

    (3) The scheme included a material misrepresentation or concealment of a material fact;

    (4) The defendant had the intent to defraud; and

    (5) The defendant used mail, wire, radio, or television communications in interstate commerce in furtherance of the scheme.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which the defendant admits satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

The defendant, RANDA ALLISON, was a resident of Stevenson and Bridgeport, Alabama.

Facts relating to COVID-19: In December 2019, a novel coronavirus, SARS-CoV-2 (the "corona virus"), was first detected in Wuhan, Hubei Province of the People's Republic of China ("PRC"), causing outbreaks of the coronavirus disease COVID-19 that have since spread globally. On January 31, 2020, the Secretary of Health and Human Services ("HHS") declared a national public health emergency under 42 U.S.C. § 247d as a result of the spread of COVID-19 to and within the United States. On March 11, 2020, the Director-General of the World Health

Organization ("WHO") characterized COVID-19 as a pandemic. On March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on March 1, 2020, as a result of the rapid spread of COVID-19 within the United States.

Unemployment Insurance System: The Social Security Act of 1935 initiated the unemployment insurance ("UI") system. UI payments were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Beginning in or around March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits. The UI system is administered for the federal government by the state employment offices, and each state administrates a separate unemployment benefits program under guidelines established by federal law.

In the State of Tennessee, the agency responsible for overseeing the disbursement of unemployment insurance is the Tennessee Department of Labor and Workforce Development ("TNLWD") which administers the unemployment benefits system on behalf of the federal government, specifically the United States Department of Labor ("DOL"). The DOL funds all substantive and administrative costs for the TNLWD.

In order to qualify for unemployment insurance, an applicant must complete an online application on TNLWD's website with the applicant's name, date of birth, social security number, and other personal information. The applicant can then file for weekly benefits by certifying online that he/she is unemployed and eligible for benefits.

Other states, such as Pennsylvania, California, and Alabama, likewise provide unemployment insurance to their citizens in a similar fashion. In the State of Pennsylvania, the agency responsible for program oversight is the Pennsylvania Department of Labor and Industry, (PADOL). In the State of California, the agency responsible for program oversight is the

California Employment Development Department (CAEDD). In the State of Alabama, the agency responsible for program oversight is the Alabama Department of Labor, (ADOL).

Federal Cares Act: On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security (CARES) Act was passed by Congress and signed into law by President Donald J. Trump. The CARES Act included an economic relief package in excess of $2 trillion designed to help the American people during the public health and economic crises related to the pending coronavirus ("COVID-19") pandemic. The CARES Act provides for three new types of unemployment benefits:

1) The Pandemic Unemployment Assistance ("PUA") program is a separate benefit program designed to cover many people who do not qualify for regular unemployment during the COVID-19 pandemic. This includes self-employed individuals, independent contractors, and part-time workers affected by COVID-19.

2) The Pandemic Emergency Unemployment Compensation ("PEUC") program is an extension of regular unemployment benefits that offers unemployment benefits up to thirteen (13) weeks beyond the number of weeks available from regular unemployment. The CARES Act made these PEUC benefits available to the unemployed between March 29, 2020, and December 26, 2020.

3) The Federal Pandemic Unemployment Compensation ("FPUC") program provides an extra $600 per week in addition to regular or PUA unemployment payments between March 29, 2020 and July 25, 2020. The FPUC is available for everyone on regular unemployment or PUA, except those on training benefits.

In the State of Pennsylvania, the PADOL, based in Harrisburg, Pennsylvania, administered the UI program. Those seeking UI benefits submitted online applications. Applicants had to answer specific questions to establish eligibility to receive UI benefits, including their name, Social Security Number (SSN), and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work. The PADOL relied upon the information in the application to determine UI benefits eligibility. Once an application was approved, the PADOL typically distributed state and federal UI benefits electronically to a debit card, which claimants could use to withdraw funds and/or make purchases. These debit cards were sent via the U.S. Postal Service or by a private and commercial interstate carrier to the address the claimant provided. Claimants could activate their debit card via telephone or online.

In the state of California, the CAEDD, based in Sacramento, California, administered the UI program. Those seeking UI benefits submitted online applications. Applicants had to answer specific questions to establish eligibility to receive UI benefits, including their name, Social Security Number (SSN), and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work. The CAEDD relied upon the information in the application to determine UI benefits eligibility. Once an application was approved, the CAEDD typically distributed state and federal UI benefits electronically to a debit card, which claimants could use to withdraw funds and/or make purchases. These debit cards were sent via the U.S. Postal Service to the address the claimant provided. Claimants could activate their debit card via telephone or online.

In the State of Alabama, the ADOL, based in Montgomery, Alabama, administered the UI program. Those seeking UI benefits submitted online applications. Applicants had to answer

specific questions to establish eligibility to receive UI benefits, including their name, Social Security Number (SSN), and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work. The ADOL relied upon the information in the application to determine UI benefits eligibility. Once an application was approved, the ADOL typically distributed state and federal UI benefits electronically to a debit card, which claimants could use to withdraw funds and/or make purchases. These debit cards were sent via the U.S. Postal Service or by a private and commercial interstate carrier to the address the claimant provided. Claimants could activate their debit card via telephone or online.

The Tennessee State UI Trust Fund is maintained by the US Treasury at the Federal Reserve Bank. Funds collected for Unemployment Insurance benefits payments are deposited into Bank of America, located in Nashville, TN and then wired to the Bank of America in New York, on behalf of the US Treasury. They are transferred from Bank of America to the Federal Reserve Bank. The Tennessee Department of Labor and Workforce Development (TLWFD) requests funds daily, from the US Treasury, via the Automated Standard Application for Payments (ASAP) system. Upon request, the funds are wired from the Federal Reserve Bank to the TLWFD paying account at First Horizon Bank, located in Nashville, TN. First Horizon Bank then distributes the benefits payments electronically, through direct deposit or to a debit card, as requested by the recipient.

Beginning in or about June 2020, and continuing until in or about June 2021, in the Eastern District of Tennessee and elsewhere, the defendant, RANDA ALLISON, combined, conspired, confederated, and agreed with others to devise and participate in a scheme to devise a scheme and artifice to defraud the government of the United States, governments of various states, and others, and to obtain money and property by means of false and fraudulent pretenses,

representations and promises. The conspiracy to defraud was in substance as follows:

The defendant coordinated with others who had knowledge about making false submissions to various states' UI programs and worked with them to create a system to make mass false UI claims to those states.

She obtained the personal information of other individuals with which to make false UI claims in various states. In some instances, the defendant obtained the permission of these individuals to file claims using their information; in other instances, she filed the individuals' information without their permission.

The defendant utilized a personal computer located in Alabama to submit false UI claims in her own name to the state of Tennessee.

She also worked with others to submit false claims. Specifically, the defendant and others utilized a personal cellphone or computer to submit false UI claims in various names to the states of Pennsylvania, Alabama, and Tennessee.

The defendant, aided and abetted by others, submitted false UI claims to various states on behalf of individuals she knew did not qualify for such benefits, and caused to be distributed approximately $100,225.00 in debit cards to parties in the Eastern District of Tennessee and elsewhere who were not entitled to receive the claims.

Many of the above-referenced acts and events occurred in the Eastern District of Tennessee.

The defendant admits that she conspired with others to use the mail and interstate wire communications in furtherance of the scheme to defraud described herein. Such communications include, but are not limited to, the mailing caused by the defendant from PADOL to the Eastern District of Tennessee on or about June 22, 2020, based on the defendant's submission of a fraudulent UI claim to the state of Pennsylvania in the amount of $23,454.00 using the name and personal

information of PM, who the defendant knew was not eligible to receive UI benefits from Pennsylvania. The conspiracy in which the defendant participated occurred in relation to and involving a benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with a presidentially declared major disaster and emergency.

5. The defendant understands that by pleading guilty the defendant is giving up several rights, including:

    (a) the right to plead not guilty;

    (b) the right to a speedy and public trial by jury;

    (c) the right to assistance of counsel at trial;

    (d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    (e) the right to confront and cross-examine witnesses against the defendant;

    (f) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses;

    (g) the right not to testify and to have that choice not used against the defendant; and

    (h) the right to be indicted by a grand jury.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

    (a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

    (b) The Court will impose special assessment fees as required by law; and

    (c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. The defendant agrees to pay the special assessment in this case prior to sentencing.

8. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

9. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that constitutes or is derived from, any proceeds obtained, directly or indirectly, as a result of the offense in violation of 18 U.S.C. §§ 1349, 1343, and 1341. The properties to be forfeited include, but are not limited to, the following:

**MONEY JUDGMENT**

A money judgment in the amount of $100,225.00, in favor of the United States and against the defendant, RANDA ALLISON, which represents the proceeds the defendant personally obtained as a result of an offense in violation of Title 18, United States Code, Section 1343.

The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

In the event a money judgment forfeiture is ordered, the Defendant agrees to send all money judgment payments to the United States Treasury. Defendant also agrees that the full money judgment amount shall be considered due and payable immediately. If the defendant cannot pay

the full amount immediately and is placed in custody, the defendant agrees that the Bureau of Prisons will have the authority to establish payment schedules to ensure payment of the money judgment. The defendant further agrees to cooperate fully in efforts to collect on the money judgment by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of the money judgment without notifying defendant's counsel and outside the presence of the defendant's counsel.

10. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

(a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

(b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

(c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

11. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following: The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12. This agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the

terms of this agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

13. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. If additional terms are included in the Supplement, they are hereby fully incorporated herein.

14. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

[SIGNATURES ON FOLLOWING PAGE]

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

7SEP23
Date

By: *Steven S. Neff*
Steven S. Neff
Assistant United States Attorney

9-7-23
Date

*Randa Allison*
Randa Allison
Defendant

9-7-2023
Date

*Brandon Raulston*
Brandon Raulston
Attorney for the Defendant